IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN E. STANLEY, JR.,

    Plaintiff,

v.

McALLISTER,

    Defendant.

No. 2:16-CV-1070-MCE-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's unopposed motion for summary judgment (ECF No. 21).

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's two-page first amended complaint. Plaintiff alleges as follows:

> I was assigned to a lower bunk because of my hip and back pain, and I also walk with a cane since 2009.
>
> About a week before the day (10-12-2015) I was sent to the B-1 clinic on a ducat on a visit, complaining about my pain in my hip and back.

/ / /

/ / /

Mr. Dr. McAllister seemed that he really didn't want to hear what I had to say or felt for that matter about the pain my back and hip. So I walked out on him to cool off. A week later a Sgt. Came to my cell and said I have to move. After about an hour trying to prove I had a bottom bunk chrono to no avail I had to move.

So I did. It was to another cell to a[n] upper bunk.

I was sent back to Mr. Dr. McAllister to try and get my bottom bunk chrono reapproved. Dr. McAllister said it wasn't his doing. After writing to A.D.A. Disability Program they said my lifting restrictions are to lift no more than 19 pounds. Dr. McAllister should have known this.

And this request raises one or more access/discrimination issues.

And I believe I sent the courts copies of that statement, stating that statement I had chronos for lower bunk since 2009.

I don't believe it was a computer error because Dr. McAllister stated whatever information he computed into the computer it computed out. And he purposely denied my lower bunk chrono and it put me in jeopardy for serious injury.

ECF No. 8, pgs. 1-2.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

2

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

Plaintiff claims defendant deliberately disregarded his back and hip pain by denying him a lower bunk placement, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. In his unopposed motion for summary judgment, defendant argues the undisputed evidence establishes he was not deliberately indifferent and that he is entitled to qualified immunity. For the reasons discussed below, the court finds defendant is entitled to judgment as a matter of law.

#### A. **Deliberate Indifference**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

/ / /

/ / /

/ / /

4

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

/ / /

/ / /

Defendant contends:

> Plaintiff alleges that he had a serious medical need for a lower bunk and Dr. McAllister was deliberately indifferent to that need because he rescinded Plaintiff's lower bunk chrono. (ECF Nos. 8, 11.)
> Plaintiff cannot meet either the objective or subjective component necessary to establish deliberate indifference against Dr. McAllister because the undisputed evidence shows: (1) during the relevant time period, Plaintiff did not meet necessary clinical criteria for a lower bunk chrono; and (2) Dr. McAllister sought approval to make an exception for Plaintiff, even though Plaintiff did not meet the necessary clinical criteria for a lower bunk, and provided Plaintiff a nonformulary chrono for a lower bunk based on Plaintiff's chronic lower-back pain with sciatica, chronic left hip pain, and his previous lower bunk status. (UF# 1-23, 34-36); *See e.g., Ratcliff v. Akanno*, No. 1:16-cv-00584-LJO-SAB (PC), 2018 U.S. Dist. LEXIS 139122, at *18-23 (E.D. Cal. Aug. 15, 2018) (recommending summary judgment where Plaintiff did not meet clinical criteria for a lower bunk chrono) *adopted* ECF 76 (E.D. Cal. Sep. 27, 2018). (footnote omitted).
> Plaintiff may disagree with the treatment that Dr. McAllister provided him or with the clinical criteria established by CCHCS for lower bunk chronos, but his disagreement does not state a cognizable claim under the Eighth Amendment. *See Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) ("[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."). Furthermore, "inadequate treatment due to malpractice, or even negligence, does not amount to a constitutional violation." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Defendant's evidence – which is unopposed and, therefore, undisputed – establishes the following:

1. Defendant is a prison doctor and saw plaintiff on June 8, 2015.

2. On June 8, 2015, plaintiff suffered from chronic hip and lower back pain from sciatica, and nerve pain caused by irritation of the sciatic nerve.

3. On June 8, 2015, plaintiff made intermittent use of a cane to alleviate pain and a transcutaneous electrical nerve stimulation (TENS) unit, which delivers small electrical impulses to relieve pain.

4. On June 8, 2015, defendant prescribed plaintiff 325 mg Acetaminophen three times a day as needed for pain.

5. Defendant reviewed plaintiff's medical history and examined plaintiff on June 8, 2015, and entered his observations into the prison health system's electronic form database.

6. On June 8, 2015, plaintiff's chronos were updated automatically based on the health information defendant entered into the electronic form.

6

7. Unbeknown to defendant, plaintiff's lower bunk chrono was automatically rescinded on June 8, 2015, because plaintiff did not meet new clinical criteria.

8. On September 28, 2015, plaintiff was moved from a lower bunk to an upper bunk.

9. Plaintiff informed defendant on October 12, 2015, he had been moved to an upper bunk.

10. On October 12, 2015, defendant examined plaintiff and reviewed the lower bunk criteria.

11. In defendant's medical opinion form based on his experience and education as well as the objective medical evidence, plaintiff did not meet the clinical criteria for a lower bunk assignment as of October 12, 2015.

12. Because plaintiff held a chrono for a lower bunk since 2009, defendant felt plaintiff would be a good candidate for a "nonformulary accommodation," which is a special exception to the regular clinical criteria for an accommodation, in this case a lower-bunk chrono.

13. Later on October 12, 2015, plaintiff reported to defendant he had slipped and fell while climbing into his upper bunk.

14. Plaintiff was sent to the Treatment and Triage Area and provided treatment by non-party medical staff who recorded an abrasion to plaintiff's left elbow but no other signs of injury.

15. On October 16, 2015, plaintiff submitted a request for reasonable accommodation, explaining that he was unable to climb into his upper bunk without pain and that he had fallen on October 12, 2015.

16. In this request, plaintiff sought a walker, lower bunk chrono, and pain medication.

17. On October 22, 2016, plaintiff was provided temporary approval for a lower bunk and plaintiff was moved to a lower bunk that same day.

18. On November 16, 2015, defendant received approval to issue plaintiff a permanent lower-bunk chrono.

19. In total, plaintiff was assigned to an upper bunk for a total of 25 days.

See ECF No. 21-3 (statement of undisputed facts).

///

///

///

Plaintiff was not moved to an upper bunk until September 28, 2015, and only due to a revocation of plaintiff's lower-bunk chrono caused automatically by the computer system based on revised criteria. The automatic computer revocation was unknown to defendant until October 12, 2015, when plaintiff informed defendant he had been moved to an upper bunk. Thus, for the period of September 25, 2015, through October 12, 2019, the denial of an upper bunk was not due to a sufficiently culpable state of mind on the part of defendant, but was due to an automatic function of the computer system based on new criteria.

On October 12, 2015, defendant determined plaintiff did not qualify for a lower-bunk chrono. Despite this opinion, defendant nonetheless felt a nonformulary accommodation was warranted in light of plaintiff's history. Plaintiff was temporarily provided a lower-bunk chrono on October 22, 2015. Plaintiff was provided a permanent lower-bunk chrono as a nonformulary exception in November 2015. Thus, for the 10-day period between October 12, 2015, and October 22, 2015, the denial of a lower-bunk chrono was based on defendant's professional opinion and not a sufficiently culpable state of mind. To the extent plaintiff's opinion he was entitled to a lower-bunk chrono during this period differs from defendant's opinion, plaintiff cannot sustain a claim for relief.

On this record, which the court once more notes is unopposed by plaintiff, defendant is not liable under 42 U.S.C. § 1983 as a result of any of the time plaintiff was denied a lower-bunk chrono.

### B. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Saucier v. Katz, 533 U.S. 201 (2001). Qualified immunity is not an issue before the court because, for the reasons discussed above, the court finds the undisputed evidence established no violation of plaintiff's rights occurred.

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's unopposed motion for summary judgment (ECF No. 21) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 13, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE